LILLIAN STOVER *vs.* THE EMPLOYERS' FIRE INSURANCE COMPANY.

JULY 11, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

Condon, J. This is an action of assumpsit on an insurance policy which was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff. The case is here on the defendant's bill of exceptions containing an exception to such decision and other exceptions taken to rulings during the trial. However, the defendant briefed and argued only the exception to the decision. The other exceptions not having been briefed or argued are deemed to be waived. *Cavallaro* v. *Sharp*, 84 R. I. 67, 121 A.2d 669.

The plaintiff's declaration alleges that defendant insured her interest in a certain diamond, platinum watch against all risks of loss or damage and that such a loss occurred on October 1, 1952 while the policy was in full force. She fur-

ther alleges that although she has complied with all the terms and conditions thereof, defendant has neglected and refused to perform its obligations and duties thereunder. In addition to the general issue defendant filed three special pleas alleging therein that plaintiff did not comply with certain provisions of the policy in that she failed to report her loss as soon as practicable; that she failed to file a sworn proof of loss within ninety days thereof; and that she did not commence her action within twelve months after her alleged loss. The plaintiff filed a replication joining issue whereupon the case was assigned for pre-trial.

Thereafter the superior court entered a pre-trial order in which the issues to be tried were stated as follows:

"A. Whether the plaintiff sustained loss of items described within said policy in such manner as to entitle her to make claim for such loss.

B. Whether notice of said alleged loss was given to the defendant in accordance with the terms of the policy.

C. Whether a proof of loss was filed with the defendant in accordance with the terms of said policy.

D. Whether suit was brought by the plaintiff within a period which would entitle her to prosecute said suit within the terms of said policy."

On the evidence presented at the trial the trial justice found that plaintiff had proved the loss of the watch; that she had complied with the terms and conditions of the policy; and that she was entitled to damages in the sum of $5,000 for said loss. The defendant contends that those findings and the trial justice's interpretation of the pre-trial order foreclosing "the issue of title in the plaintiff" to the watch are erroneous. If further contends that he misconceived and overlooked material evidence, that his findings are inconsistent, and that his decision is clearly wrong.

In the latter part of November 1946 plaintiff received the watch as a Christmas gift from a friend, Mr. Max Zinn. Thereafter she had it appraised by an expert who valued

it at $5,000. She then submitted such appraisal to defendant's agent and showed him the watch. The defendant thereupon issued to her a policy which was renewed each year, the last renewal being dated October 31, 1951. That renewal continued the policy in effect to December 16, 1952. The watch is described therein as follows: "One Diamond, platinum watch, bracelet (155) round Diamonds, 4 baguettes, 8 French cut-square Diamonds, 2 half moon Diamonds 5,000.00."

The plaintiff testified that the loss occurred in consequence of the following events. On the Monday before Thanksgiving day 1951 she wore the watch on a trip to Boston where she attended the theatre with Mr. Zinn. The plaintiff's niece Mrs. Dora Schulman accompanied them. After the theatre plaintiff drove back to Providence and arrived at the Narragansett Hotel between 12:30 and 1 o'clock the next morning. Mr. Zinn, who was the manager of the hotel, was to get out of the car there and plaintiff was to drive on to Mrs. Schulman's home in Woonsocket. Before getting out Mr. Zinn suggested that because of the lateness of the hour she ought not to wear the watch for the remainder of the ride. He offered to keep it for her in his box in the hotel vault. The plaintiff concurred in that suggestion, took off the watch, wrapped it in her handkerchief, and handed it to him.

That was the last time she saw the watch. Later that day she talked to Mr. Zinn on the telephone and he said he would bring the watch to her on Thanksgiving day at Mrs. Schulman's home where they were to have a late dinner together. On that day at about 2 p.m. he called plaintiff on the telephone and told her he would have the watch for her when she would call to pick him up at the hotel at 6:30 p.m. She never talked to him again as he died suddenly that afternoon before 6 o'clock.

After Mr. Zinn's funeral she asked a Mr. Asher, who apparently was in charge of the hotel, to get her watch from

Mr. Zinn's box. Although he admitted to her that he had seen the watch he said he could do nothing for her and that she should see Edward Port, who was Mrs. Zinn's brother. She telephoned to him but received no satisfaction. On the contrary he urged her to drop the matter. She then consulted Morris Waldman, the attorney who was handling Mr. Zinn's estate. This brought no definite results at first. Finally in December 1951 he told her that Mrs. Zinn claimed the watch was hers and said she would not give it up. At that time plaintiff did not know who had possession of her watch and after many fruitless efforts to find out she became satisfied in the early fall of 1952 that she was not going to recover it.

It further appears from the evidence that either late in 1945 or early in 1946 Mr. Zinn gave his wife a diamond bracelet watch. She testified that she usually kept it in a safety box at the Union Trust Company. This box was in their names jointly and each had access to it. On some occasions she left the watch in her husband's box in the hotel vault. There was a key to this box in their room at the hotel. She testified that it was her husband's box and that he told her if anything happened to him everything in there was hers. After his death she claims she found her watch in that box.

The plaintiff testified that Mr. Waldman told her in December 1951 Mrs. Zinn had the platinum watch and was claiming it as hers. Apparently plaintiff still expected the watch would be returned to her and she continued trying thereafter to obtain it. But finally in the late summer or early fall of 1952 she telephoned to Edward Port and asked him "if there was any news about my watch, if there was going to be any chance of my getting it back and I was told no." Thereafter on October 1, 1952 she notified defendant's agent in writing that the watch was lost, and later at the office of defendant's counsel she made a sworn statement in writing of the circumstances in which it became

lost. Subsequently by letter of October 24, 1952 counsel informed her that defendant denied liability because she had failed to give notice of her loss in accordance with the terms of the policy. She then commenced the instant action on September 28, 1953.

Mr. Waldman testified that plaintiff called him several times after Mr. Zinn's death and described her watch and asked him to locate it. As a result he had a conference with Mrs. Zinn prior to the end of December 1951 and learned that she claimed the watch that was in the hotel box was hers. He so informed plaintiff. He was asked if plaintiff had described the watch she was seeking as a diamond, platinum, bracelet watch and he answered: "Yes. I think she not only described it, she brought me in the insurance policy to help me with the description * * *." But he did not testify that the watch in Mrs. Zinn's possession corresponded to such description.

At the end of the trial it developed that a misunderstanding existed between counsel as to whether the watch claimed by Mrs. Zinn was the same as the one described in plaintiff's policy. The plaintiff's counsel declined to stipulate that it was the same watch. Mrs. Zinn was recalled and she produced the watch for inspection. The defendant then called plaintiff to the stand, showed her the watch and asked her if that was the diamond, platinum, bracelet watch she had insured. She answered: "It looks like it, yes, sir. * * * As far as I can see, it looks like mine." However, she did not identify it definitely by the description of her watch in the policy, and neither did Mr. Waldman, who was also recalled. He testified: "Well, it's—it seems to me that that is the watch I saw Mrs. Zinn wear on several occasions but to say positively this is it, I cannot do so."

Mrs. Rose O'Brien, a sister of Mrs. Zinn, testified that it was the watch she had seen Mrs. Zinn wearing many times. She said she had never seen anything just like it before. She could not describe the watch more definitely.

At this point Mrs. Zinn was again recalled and she testified that on the day Mr. Zinn died this watch was "In the vault in the safe and it was in a box, a little vault in the Narragansett Hotel," and that it had been continuously in her possession since that time.

We have referred to the pleadings and the evidence at length to point up the peculiar nature of the problem presented to the trial justice for solution. In our view he did not err in deciding that the pre-trial order precluded defendant from raising any question of plaintiff's title to the diamond, platinum, bracelet watch described in the policy. We are also of the opinion that if such a question could be raised, notwithstanding such order, his conclusion that plaintiff had proved her title is reasonably supported by the evidence.

From our reading of the transcript it appears to us that such evidence is undisputed. No one described the watch produced by Mrs. Zinn so that it could reasonably be said to correspond with the watch as precisely described in the insurance policy. The plaintiff positively testified that such watch was a gift to her from Mr. Zinn, and that since 1946 she had exercised absolute dominion over it down to the day she voluntarily placed it in his temporary custody for safekeeping. Any inference to the contrary that might be drawn from all the evidence was not the only reasonable one and therefore the trial justice was not bound to draw such an inference. *Main Realty Co.* v. *Blackstone Valley Gas & Electric Co.*, 59 R. I. 29.

The next question is: Was there a loss within the meaning of the policy? The trial justice found that there was and we are of the opinion that such finding is correct. The plaintiff was justified in assuming that her watch was in a safe place somewhere in the hotel and that whoever had it would surrender it when the fact of her ownership was shown. As long as such assumption was reasonable she apparently tried in every way possible to recover the watch.

After she was pointedly told by Mr. Port in the early fall of 1952 that she was not going to get it back that assumption was no longer reasonable and she could not further rely upon it. On the contrary it then became definitely clear that she had lost the watch beyond any reasonable hope of recovery.

On this view of the evidence plaintiff clearly reported such loss as soon as practicable in accordance with the terms of the policy when she notified defendant's agent thereof on October 1, 1952. And her attorney's letter of November 3, 1952 referring to the sworn statement she gave to defendant's counsel, when considered in conjunction with such statement, represents substantial compliance with the provision of the policy which requires the filing of a sworn proof of claim within ninety days of said loss. Hence the trial justice did not err in so finding.

On the basis of the above findings plaintiff commenced her suit within twelve months of her loss when she sued out her writ on September 28, 1952. The only question remaining is whether the trial justice misconceived any important evidence or whether he was clearly wrong in finding that plaintiff had proved her case by a fair preponderance of the evidence. We have carefully read the transcript and are unable to find any important evidence that has been misconceived or overlooked.

Whether the watch which plaintiff lost and the watch which Mrs. Zinn produced in court were one and the same was a matter of defense on which defendant had the burden of proof. None of its witnesses who testified as to the identity of the watches clearly made out such identification. As we said above, the evidence on this point might submit to an inference that the watches were the same, but such an inference is not the only reasonable one. The trial justice not only saw and heard those witnesses but he also saw the watch and he concluded that the evidence in proof of identity was not credible. The watch was not introduced

in evidence, hence we do not have the benefit of whatever aid actual sight thereof might contribute toward evaluating the importance of defendant's evidence on the question of identity. In the circumstances we are of the opinion that the trial justice did not err in making the findings complained of nor can we say that his decision is otherwise clearly wrong.

There is another watch involved in this suit as to which the trial justice found that plaintiff had failed to prove her claim, but since she took no exception to that finding we have not hereinbefore referred to such watch and her claim of loss thereof is not entitled to any consideration.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

FLYNN, C. J., did not participate in the decision.

*Aram A. Arabian,* for plaintiff.

*Sherwood & Clifford, Kirk Hanson,* for defendant.